IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NUMBER_____ |
| v. | : | DATE FILED_____ |
| **LEN SEM** | : | VIOLATIONS: |
| **KIM MEAS** | | 18 U.S.C. § 371 (conspiracy - 1 |
| **VIVI FNU** | : | count) |
| | | 8 U.S.C. § 1324(a)(1)(A)(ii) |
| | : | (transporting illegal aliens - 5 counts) |
| | : | Notice of forfeiture |

## INDICTMENT

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

### IMMIGRATION LAWS AND REGULATIONS

1. Law and regulations of the United States provided that citizens of the Republic of Indonesia, the Kingdom of Cambodia, the Republic of Vietnam and the Republic of Philippines, and other nations, could be granted status as non-immigrant visitors so they could temporarily visit the United States on visas, which did not allow the aliens to obtain employment in and reside and remain in the United States beyond their authorized visits.

2. Law and regulations of the United States required each non-immigrant visitor to depart the United States at the expiration of his or her authorized period of admission.

3. From on or about March 1, 2003, to the present, Immigration and Customs

1

Enforcement (ICE) of the Department of Homeland Security was the agency of the United States government with responsibilities for the oversight and regulation of immigration laws in the United States, including the enforcement of immigration laws in the work place.  Prior to March 1, 2003, the Immigration and Naturalization Service (INS) of the Department of Justice was the agency of the United States government which carried out these responsibilities.

## EMPLOYEE IMMIGRATION FORMS

4. Section 274A of the Immigration and Nationality Act, as amended by the Immigration Reform and Control Act of 1986, required employers to hire only United States Citizens and aliens who were authorized to work in the United States.  Employers were required to verify employment eligibility of any persons hired after November 6, 1986 using the Form I-9.

5. The employer was also required to examine, at the time of hire, the documentation provided by the individual that established the identity and employment eligibility to ensure that the documents presented were genuine.  The employer had to retain the Form I-9 for three years after the date of hiring, or one year after the date the individual's employment was terminated, whichever was later.

6. Section 1 of the Form I-9 had to be completed and signed by the employee at the time the employee was hired.  Section 1 required personal identifying information for the employee and an attestation, under penalty of perjury, by the employee that he/she was a citizen or national of the United States, a lawful permanent resident, or an alien authorized to work.  If Section 1 was prepared by a person other than the employee or was translated to the employee, the form required the signature and attestation, under penalty of perjury, of the person who

assisted in the completed of the form.

7. Section 2 of the I-9 form, "Employee Review and Verification" required the employer to examine evidence of identity and employment eligibility within three days of employment, and to list the documents provided by the employee for employment verification. Section 2 contained a certification section for the employer to attest, under penalty of perjury, that the employer had examined the documents presented, that the documents appeared to be genuine, and that to the best of the employer's knowledge, the employee was eligible to work in the United States.

## THE DEFENDANTS AND RELATED ENTITIES

8. LS Services Corporation ("LS"), located in Philadelphia, was an employee leasing company, that is, a company engaged in the business of supplying employees, or workers, to its business clients.

9. Defendant LEN SEM was the owner of LS. In this capacity as owner, defendant SEM signed contracts and other correspondence on behalf of the corporation in addition to opening a bank account in the name of the corporation.

10. Defendant KIM MEAS was the operations manager of LS. Although defendant LEN SEM was the titular superior officer of the company, defendant MEAS exercised actual authority over the corporation which included hiring and firing employees, cashing checks issued by LS to other companies at various check cashing agencies, and the payment of employees in cash.

11. Defendant VIVI FNU was the office administrator and work scheduling planner. Her duties, included among other things, preparing work schedules for LS's employees,

the bulk of whom were illegal aliens and arriving for "pickups" and "drop-offs" for the workers from their residence to various employers through the greater Philadelphia and Southern New Jersey Metropolitan area.

   12. The following entities (a/k/a "subsidiary leasing companies"), which were paid approximately $23 million by LS during the two year period between 2006 and 2008, were organizations from whom LS claimed it obtained workers:

> Chadwick Management Services Corporation;
> Lamb Management Services Corporation
> Franz Management Services Corporation;
> L&L Temporary Agency Corporation;
> Bennett Management Services Corporation;
> Bright Start Services Corporation
> VH Management Services Corporation
> Watson Services Corporation
> McKean Management Corporation;
> Faster Union Services Corporation;
> Carlisle Services Corporation;
> Whelan Management Services Corporation
> Scroll Services Corporation; and
> Global Staffing Corporation

which LS then subleased to other corporations in the greater Philadelphia and Southern New Jersey metropolitan area. Unlike LS which was located in a commercial building, the business addresses of the subsidiary leasing companies were located in personal residences most of which were two-story row homes.

   13. The subsidiary leasing companies did not maintain business bank accounts, nor did they, with few exceptions, prepare and file federal income or employment tax returns with the Internal Revenue Services.

## THE CONSPIRACY

14.     Beginning in or about 2006, and continuing to in or about 2008, in the Eastern District of Pennsylvania, and elsewhere, defendants

**KIM MEAS**
**LEN SEM**
**VIVI FNU**

conspired and agreed with others know and unknown to the grand jury, to commit offenses against the United States, that is, to knowingly, and in reckless disregard of the fact that an alien had come to, entered, and remained in the United States in violation of law, transport and move, and attempt to transport and move such alien within the United States by means of transportation and otherwise, in furtherance of such violation of law for the purpose of commercial advantage and private financial gain in violation of Title 8, United States Code, Section 1324(a)(1)(A).

## MANNER AND MEANS

15.     The manner and means by which defendants LEN SEM, KIM MEAS and VIVI FNU sought to accomplish the object of the conspiracy included, among other things, the following:

a.     The defendants' employee leasing corporation, LS, provided leased employees to various client businesses throughout the Philadelphia and Southern New Jersey Metropolitan area ("LS's clients").  Some of the leased employees were individuals qualified to work within the United States ("legal employees) while others were illegal aliens ("illegal alien employees").

b.  LS required its legal employees to prepare IRS Form W-4 and Immigration and Customs Form I-9 which LS maintained at its corporate office. No such forms were prepared, nor could they have been prepared, for the illegal aliens who were not legally authorized to work in the United States.

c.  LS Services Corporation entered into contracts which required LS's clients to pay LS the hourly rates for each employee provided by LS.

d.  Defendants LEN SEM, KIM MEAS, and VIVI FNU prepared and caused to be prepared work schedules for the workers, both legal employees and illegal alien employees, which were given to its drivers. The schedules included: (i) the names of the legal employees and illegal alien employees; (ii) the location where both the legal employees and illegal alien employees would be picked up; and (iii) the business client's job site where the employees would work on a particular day.

e.  Defendants LEN SEM, KIM MEAS, and VIVI FNU used multiple vehicles, owned by LS, to pick up both legal and illegal aliens employees at various locations in Philadelphia, Pennsylvania and transport them to job sites of LS's business clients and back to their residences after their work shift had ended.

f.  Defendants LEN SEM, KIM MEAS, and VIVI FNU did not charge the legal employees and illegal alien employees transportation fees for transporting them to the work site of LS's business clients.

g.  Defendants LEN SEM, KIM MEAS, and VIVI FNU prepared and caused to be prepared invoices with the names of its legal and illegal employees. To distinguish its legal employees and the illegal alien employees that it employed, an "x" was placed next to

6

the name of LS's legal employees in some of the company's books and records.

It was further part of the conspiracy that:

16. Defendants LEN SEM, KIM MEAS, and VIVI FNU through LS and the subsidiary leasing companies, agreed in their contracts and oral agreements to provide employees to business clients in the Philadelphia and Southern New Jersey metropolitan area. The business clients contractually agreed to pay LS at a special rate per hour for each employee.

17. Defendants LEN SEM, KIM MEAS and VIVI FNU received fees from LS's business clients in the form of checks, which were initially deposited into LS's business bank account. During the years 2006 through 2008, defendants LEN SEM, KIM MEAS and VIVI FNU, as the owners and principal managers of LS, received fees totaling approximately $25 million dollars which were deposited into LS's business bank account. After making the deposits, defendant LEN SEM or KIM MEAS wrote checks totaling approximately $23 million to LS's subsidiary leasing companies to pay wages to illegal employees.

18. Defendant LEN SEM and KIM MEAS cashed these checks at check cashing agencies. Defendants SEM, MEAS and VIVI FNU paid the illegal alien employees in cash with the cash obtained from the check cashing agencies. In contrast, LS's legal employees were paid by payroll check instead of cash.

**OVERT ACTS**

In furtherance of the conspiracy and to effect its object, defendants LEN SEM, KIM MEAS and VIVI FNU and others, known and unknown to the grand jury, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1. On or about September 22, 2006, defendant LEN SEN purchased

a 2006 Ford Van for approximately $26,000 from McCafferty Ford in Langhorne, Pennsylvania. The van was used to transport illegal alien employees from their residences to LS's business client job locations.

        2.        On or about May 19, 2007, defendant LEN SEN purchased a 2006 Ford for approximately $26,000 from McCafferty Ford in Langhorne, Pennsylvania. The van was used to transport illegal alien employees from their residences to LS's business client job locations.

        3.        On or about March 23, 2008, defendant LEN SEM purchased a 2008 Ford Explorer for approximately $35,000 from Pacifico Ford in Philadelphia, Pennsylvania. The van was used to transport illegal alien employees from their residences to LS's business client job locations.

        4.        On or about April 1, 2008, defendants LEN SEM, KIM MEAS and VIVI FNU arranged for E.T., an illegal alien, to be transported to and from M.E. where she was employed and subsequently paid in cash by LS for the services that she performed at M.E.

        5.        On or about April 1, 2008, defendant LEM SEM, KIM MEAS and VIVI FNU arranged for K.K., an illegal alien, to be transferred to and from M.E. where she was employed and subsequently paid in cash by LS for the services that she performed at M.E.

        6.        On or about May 20, 2008, defendants LEN SEM, KIM MEAS and VIVI FNU arranged for A.K. to be transported to and from M.E. where she was employed and subsequently paid in cash by LS for the services that she performed at M.E.

        7.        On or about December 3, 2008, defendants LEN SEM, KIM MEAS and VIVI FNU arranged for J (last name unknown), an illegal alien, to be transferred to

and from A.B.C.M. where she was employed and subsequently paid in cash by LS for the services that she performed at A.B.C.M.

        8.      On or about December 3, 2008, defendants LEN SEM, KIM MEAS and VIVI FNU arranged for D.T., an illegal alien, to be transferred to and from A.B.C.M. where she was employed and subsequently paid in cash by LS for the services that she performed at A.B.C.M.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.    Paragraphs 1 through 11 of Count One of this indictment are incorporated here.

    2.    On or about April 1, 2008 in the Eastern District of Pennsylvania and elsewhere, defendants

**LEN SEN**
**KIM MEAS**
**VIVI FNU**

transported and moved E.T., an illegal alien within the United States, knowing and in reckless disregard of the fact that the alien had come to, entered, and remained in the United States in violation of law, and in furtherance of such violation of law, for the purpose of commercial advantage and private financial gain.

    In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (a)(1)(B)(I).

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1 through 11 of Count One of this indictment are incorporated here.

      2.      On or about April 1, 2008 in the Eastern District of Pennsylvania and elsewhere, defendants

**LEN SEN**
**KIM MEAS**
**VIVI FNU**

transported and moved K.K., an illegal alien within the United States, knowing and in reckless disregard of the fact that the alien had come to, entered, and remained in the United States in violation of law, and in furtherance of such violation of law, for the purpose of commercial advantage and private financial gain.

      In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (a)(1)(B)(I).

## COUNT FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

  1. Paragraphs 1 through 11 of Count One of this indictment are incorporated here.

  2. On or about May 20, 2008 in the Eastern District of Pennsylvania and elsewhere, defendants

**LEN SEN**
**KIM MEAS**
**VIVI FNU**

transported and moved A.K., an illegal alien within the United States, knowing and in reckless disregard of the fact that the alien had come to, entered, and remained in the United States in violation of law, and in furtherance of such violation of law, for the purpose of commercial advantage and private financial gain.

  In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (a)(1)(B)(I).

## COUNT FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.    Paragraphs 1 through 11 of Count One of this indictment are incorporated here.

    2.    On or about May 20, 2008 in the Eastern District of Pennsylvania and elsewhere, defendants

**LEN SEN**
**KIM MEAS**
**VIVI FNU**

transported and moved J (last name unknown), an illegal alien within the United States, knowing and in reckless disregard of the fact that the alien had come to, entered, and remained in the United States in violation of law, and in furtherance of such violation of law, for the purpose of commercial advantage and private financial gain.

    In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (a)(1)(B)(I).

## COUNT SIX

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.    Paragraphs 1 through 11 of Count One of this indictment are incorporated here.

    2.    On or about May 20, 2008 in the Eastern District of Pennsylvania and elsewhere, defendants

**LEN SEN**
**KIM MEAS**
**VIVI FNU**

transported and moved D.T., an illegal alien within the United States, knowing and in reckless disregard of the fact that the alien had come to, entered, and remained in the United States in violation of law, and in furtherance of such violation of law, for the purpose of commercial advantage and private financial gain.

    In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (a)(1)(B)(I).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.    As a result of the violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii) as charged in this indictment, defendants

>    **LEN SEN**
>    **KIM MEAS**
>    **VIVI FNU**

shall forfeit to the United States:

    a.    Any and all property that constitutes, or is derived from, proceeds obtained directly or indirectly from the commission of these offenses, including, but not limited to the sum of approximately $ 23,000,000;

    b.    Any and all property used to facilitate, or intended to be used to facilitate the commission of these offenses, including, but not limited to the sum of approximately $ 23,000,000.

    2.    If any of the property subject to forfeiture as a result of any act or omissions of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described above.

In violation of Title 18, United States Code, Section 982(a)(6), Title 8, United 1324(b) and Title 28 United States Code, Section 2461(c).

**A TRUE BILL:**

_____
**GRAND JURY FOREPERSON**

_____
**MICHAEL L. LEVY**
**UNITED STATES ATTORNEY**